FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In the matter of | : | Case No.  05-34083/JHW |
| Gail Mariano | : | |
| Debtor | : | |
| Andrew Sklar, Trustee | : | Adver. No. 05-2649 |
| Plaintiff | : | |
| v. | | |
| | : | **OPINION ON SUMMARY** |
| Continental Casualty Company | | **JUDGMENT MOTION** |
| | : | |
| Defendant | : | |

APPEARANCES:   Andrew Sklar, Esq.
411 E. Route 70, Suite 200
Cherry Hill, New Jersey  08034
Counsel for the Plaintiff

Kenneth E. Bellani, Esq.
Carroll, McNulty & Kull, LLC
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, New Jersey  07920
Counsel for Defendant

**FILED**

JAMES J. WALDRON, CLERK

March 16, 2006

U.S. BANKRUPTCY COURT
CAMDEN, N.J.

BY: Michele Boyer, Judicial Assistant
to Chief Judge Wizmur

In this adversary proceeding, the Chapter 7 trustee challenges the

secured position of the pre-petition levying judgment creditor, Continental

Casualty Company, on the ground that the creditor failed to comply with the

-1-

sequence of execution requirements specified in N.J.S.A. § 2A:17-1.  The

trustee moves here for summary judgment against the judgment creditor.

Because I conclude that the judgment creditor complied with the statutory

mandate, the trustee's summary judgment motion is denied.

## FACTS AND PROCEDURAL HISTORY

On December 13, 2002, the debtor, Gail Mariano, pled guilty to two

counts of bank fraud in the district court.  In addition to receiving a two-year

jail sentence, Ms. Mariano was ordered to pay restitution by the federal court

in a judgment entered on May 12, 2003.  The Judgment of Conviction was

amended to require the payment of $955,367.87 in restitution to Continental

Casualty Company ("CCC"), the defendant herein.  Ms. Mariano was

incarcerated from June 2003 until some time in March 2005.

In an attempt to identify Ms. Mariano's assets, two investigative reports

were commissioned by CCC, and prepared by J.F. Zimmelman & Associates,

Inc., one in August 2002, prior to the entry of the judgment for restitution, and

the second in February 2004, while she was incarcerated.[1]  The 2004 report

---

[1]     The written report of the August 2002 investigation has not been
supplied in this record, but the Chapter 7 trustee certifies in support of his
motion for summary judgment that such an investigation took place.

concluded that the "only tangible asset [of Ms. Mariano] is home ownership,"

and that "the house is vacant and Gail is not living there."[2]  The 2004 report

reflected that Ms. Mariano was incarcerated in Danbury, Connecticut, and that

her projected release date was March 26, 2005.

On or about June 7, 2004, CCC issued an Information Subpoena to Ms.

Mariano while she was in prison.  She responded on June 19, 2004.  In

relevant part, Ms. Mariano indicated as follows:

1.    She provided her full name and birth date.  She did not supply her
      social security number, driver's license and expiration date,
      telephone number or employer, noting "Please See Last Page".  On
      the last page, she noted "I am presently incarcerated and do not
      have access to the information you have requested."

2.    She responded "None" to whether she received any money from
      sources such as alimony, loan payments, rental income, pensions,
      bank interest or stock dividends.

3.    She checked "no" to receiving social security benefits.

4.    She checked "no" to whether she owns property where she resides.

5.    She left blank the response to the question of whether she owns
      any other real estate.

6.    In response to the question of whether the present value of her
      personal property, the list of which includes automobiles,
      furniture, appliances, stocks, bonds and cash on hand exceeds
      $1,000, she responded "no".

---

[2]      Aff. of Kenneth E. Bellani, Exh. E.

7.    As to "cash on hand", she drew a line after the dollar sign.

8.    As to "other personal property", she left the space blank.

9.    She answered "no" as to whether she owns a motor vehicle.

10.    She answered "no" as to whether she owns a business.

Ms. Mariano certified to the statements in the Information Subpoena.[3]

On March 3, 2005, CCC obtained a Writ of Execution from the New Jersey Superior Court, Law Division, Mercer County.  The Writ directed the sheriff of Camden County to "satisfy the said judgment out of the personal property of the judgment debtor, within your County; and if sufficient personal property cannot be found, then out of the real property in your County belonging to said judgment debtor at the time when the judgment was entered or docketed."[4]  By correspondence directed to the sheriff dated March 31, 2005, CCC requested the sheriff to "satisfy the Plaintiff's judgment out of the <u>real property</u> of the Defendant, Gail Mariano who resides at 12 Maple Avenue, Cherry Hill, New Jersey."[5]  CCC provided the sheriff with a copy of Ms. Mariano's responses to its Information Subpoena, highlighting that she

---

[3]    <u>Id</u>. at Exh. B.

[4]    <u>Id</u>. at Exh. C.

[5]    <u>Id</u>. (emphasis in original).

"indicates that in effect . . . she owns no personal property against which this

Writ may be executed."[6]  The sheriff complied with CCC's direction, levying

upon Ms. Mariano's interest in real estate on April 27, 2005.[7]


On July 27, 2005, Gail Mariano filed a voluntary Chapter 7 petition.  The

Chapter 7 trustee, Andrew Sklar, Esq., filed this adversary proceeding on

September 13, 2005, asserting his position as a hypothetical levying judgment

lienholder under 11 U.S.C. § 544(a)(2), and challenging the secured position of

CCC as against the debtor's real property.  On November 19, 2005, the trustee

moved for summary judgment.  Oral argument was considered on

December 19, 2005.


## DISCUSSION


On this summary judgment motion, the trustee contends that CCC failed

to comply with N.J.S.A. § 2A:17-1, which requires a judgment creditor to first

levy upon a debtor's personalty before levying on her real property.  Therefore,

contends the trustee, the levy must be invalidated and the judgment lien

subordinated to the hypothetical levying judgment lienholder position of the

_____

[6]      Id.

[7]      Id. at Exh. D.

-5-

trustee under 11 U.S.C. § 544. CCC replies that its reliance on the debtor's responses to its interrogatories was justified, that it would have been futile to instruct the sheriff to levy on personal property that did not exist, and that its instruction to the sheriff to proceed against the debtor's real property was not in violation of the order of execution set forth in N.J.S.A. § 2A:17-1.


A.    New Jersey Sequence of Execution Law

"To establish a lien against a judgment debtor's real property, a creditor need only enter a judgment in the records of the Superior Court; a levy and execution on real property owned by the judgment debtor are not required." New Brunswick Sav. Bank v. Markouski, 123 N.J. 402, 411, 587 A.2d 1265, 1269 (1991) (citing, inter alia, In re Blease, 605 F.2d 97, 98 (3d Cir. 1979)). "The judgment is a binding judicial determination of the rights and duties of the parties to the action and, when recorded on the docket of the Clerk of the Superior Court, functions as notice of the debtor-creditor relationship." Id. CCC obtained a restitution judgment against the debtor in federal court, which it recorded on the docket of New Jersey's Superior Court, thus creating a lien on the debtor's real property, located at 12 Maple Avenue, Cherry Hill, New Jersey.

-6-

Under 11 U.S.C. § 544, "as of the date of filing of the debtor's Chapter 7 petition the trustee holds the status . . . of a hypothetical judicial lien creditor who has levied upon the debtor's property."[8] In re Italiano, 66 B.R. 468, 478 (Bankr. D.N.J. 1986). "As such, the trustee's lien could only be defeated by a judgment creditor holding a valid lien who had properly levied." Id. The parties do not contest that CCC had a valid judgment lien. The issue here is whether CCC properly levied on the debtor's property.

New Jersey law governs the required sequence of execution:

> In every writ of execution which shall be issued against real estate, the sheriff or other officer to whom such writ may be directed shall be commanded that he cause to be made, of the goods and chattels in his county of the party against whom such execution issues, the debt, damages and costs or sums of money mentioned in such execution; and that, if sufficient goods and chattels of such party cannot be found in his county, he cause the whole or the residue, as the case may require, of such debt, damages and costs or sum of money to be made of the real estate whereof such party was seized on the day when such real estate became liable to such debt, damages and costs or sum of money, specifying the day particularly, or at any time afterwards, in the hands of any person then having the same.

--------------------------------------------------------

[8]    "It has been held as a corollary that a levy on real estate under a writ of execution gives a junior judgment creditor priority over senior judgment creditors who have not levied." In re Bobilin, 83 B.R. 258, 261 (Bankr. D.N.J. 1988). "It was this rule of New Jersey law which formed the basis of the Third Circuit's holding in Blease . . . that as a hypothetical execution creditor, a bankruptcy trustee takes priority over, and therefore can avoid, the liens of nonlevying judgment creditors." Id.

-7-

N.J.S.A. § 2A:17-1.  "N.J.S.A. 2A:17-1, clearly and unequivocally expresses the

legislative mandate that before the real property of a debtor may be seized and

sold, the sheriff shall first levy upon the debtor's goods and chattels located

within the county to satisfy the judgment and costs."  Raniere v. I & M

Investments, Inc., 159 N.J. Super. 329, 335, 387 A.2d 1254, 1257 (Ch. Div.

1978), aff'd, 172 N.J. Super. 206, 411 A.2d 719 (App. Div.), certif. denied, 84

N.J. 473, 420 A.2d 1298 (1980).


    In Raniere, the creditor conducted "no supplementary proceedings . . . to

ascertain the nature and value of any property owned by [the debtors]."  Id. at

337, 387 A.2d at 1258.  Instead, the creditor directed the sheriff to proceed

first against the realty of the debtors, providing a writ of execution with a metes

and bounds description of the premises to be levied.  Id. at 332-33, 387 A.2d at

1256.  Although the writ included the standard language directing the sheriff to

first levy against the debtors' personalty, the sheriff initially levied on the real

estate, as directed by the creditor.  Id. at 333, 387 A.2d at 1256.  The levy on

the writ of execution was conducted and returned on the same day it was

received by the sheriff.  Id.  The realty was then sold through execution sale.

Id.  The debtors thereafter filed an action in the Chancery Division, seeking to

restrain the creditor from taking possession of, or conveying, the premises.   Id.

The Raniere court denied the creditor's motion to dismiss, entered

summary judgment in favor of the debtor plaintiffs, and vacated the sale.   Id.

at 334, 387 A.2d at 1256.  The chancery judge held that creditors must strictly

comply with N.J.S.A. § 2A:17-1, and that the creditor and the sheriff in this

instance had utterly failed to do so.  The Raniere court held that:

> In order to satisfy the requirements of N.J.S.A. 2A:17-1 the
> judgment creditor or his attorney must make a good faith attempt
> to ascertain the location of the debtor's personalty within the
> county and supply this information to the sheriff along with the
> writ of execution.  Before levying and executing on the debtor's
> realty the sheriff must return a writ of nulla bona, certifying that
> he has made a strict and diligent search and has been unable to
> locate any personalty of the debtor within the county.

Id. at 337-38, 387 A.2d at 1258.


The critical inquiry under Raniere is whether the judgment creditor made

"a good faith attempt to ascertain the location of the debtor's personalty within

the county and suppl[ied] this information to the sheriff along with the writ of

execution."  Id. at 337, 387 A.2d at 1258.  What constitutes a "good faith

attempt to ascertain the location of the debtor's personalty" was more recently

addressed by the New Jersey Supreme Court in Pojanowski v. Loscalzo, 127

N.J. 240, 242, 603 A.2d 952, 953 (1992).  The Pojanowski court restated the

mandate of N.J.S.A. § 2A:17-1 to require that the creditor must exert

"reasonable efforts to determine whether [the debtor] had personal assets

under Rule 4:59-1(e)." Id., 603 A.2d at 953. The judgment creditor filed a

motion to compel the post-judgment deposition of the judgment debtor. Id. At

the deposition, the creditor inquired about checking accounts, stocks, bonds,

property, income sources, and pensions. Id. The debtor "responded negatively

or evasively to all of those inquiries." Id. Based on the debtor's deposition, and

her testimony that she had no personal property to levy upon, the court

concluded that "[t]here is ample justification . . . that plaintiff made a good

faith effort to discover [the debtor's] personal property." Id. The court added

that no suggestion had been made by the debtor that "if an additional inquiry

were mounted to find personal assets belonging to her, or if a writ of execution

were issued to direct the sheriff to levy on personal assets, a different result

would obtain." Id.


Here, an information subpoena was issued, and was returned under

certification. The information subpoena issued in this case has the same

import as the deposition testimony taken in Pojanowski.[9] In that case, the New

Jersey Supreme Court affirmed the lower courts' determination that, under the

---

[9] Under Rule 4:59-1(e) of the New Jersey State Rules of Court, a
judgment creditor may conduct supplementary proceedings in aid of the
judgment or execution. N.J.Ct.R. 4:59-1(e). The judgment creditor may
examine any person, including the judgment debtor, through deposition in
accordance with the Rules, may seek an order for discovery under Rule 6:7-2(a)
or may issue information subpoenas in accordance with Rule 6:7-2(b). Id.

circumstances, the creditor had made the required "reasonable efforts" for a

"diligent attempt to locate [debtor's] personal property as required by N.J.S.A.

2A:17-1 before [the creditor] obtained an order authorizing the sale of [the

debtor's] real estate." <u>Pojanowski</u>, 127 N.J. at 242, 603 A.2d at 953.  That is,

the creditor's taking of a deposition of the debtor constituted "reasonable

efforts", under the circumstances, to locate personalty owned by the debtor.

<u>Id</u>.  In this case, the debtor's answers, while somewhat incomplete as to certain

information, such as her social security number and her driver's license

number, nonetheless provided a sufficient basis for CCC to determine that the

debtor had no personal property upon which to levy.[10]


     The trustee questions CCC's failure to conduct any additional discovery

before issuing the writ of execution.  The trustee highlights the passage of time

between the February 2004 asset report and the debtor's answers to CCC's

written interrogatories in June 2004, and CCC's issuance of the writ of

execution in March 2005, with no intervening attempts to locate the debtor's

personalty.  The trustee suggests that CCC's failure to update the information

was not reasonable.  I must reject the trustee's argument in this regard.  The

---

[10]    The efforts of CCC to locate debtor's personalty were not limited to
the written interrogatories, but also included the commission of an
investigative agency to look for debtor's assets, pre-judgment, in August 2002,
and, post-judgment, in February 2004.

passage of time is less meaningful under the circumstances presented here than it might otherwise be, because the debtor was incarcerated from June 2003 through March 2005. It was reasonable for CCC to assume that the debtor did not acquire personalty during her incarceration. As well, as in Pojanowski, the trustee does not suggest that any personal assets of the debtor would have been found if an additional inquiry had been conducted, or if the sheriff had been directed to levy first upon personalty.

The trustee also suggests that because CCC knew that the debtor was due to be released in late March 2005, CCC should have deposed her prior to directing the sheriff to levy against the debtor's real property. While the trustee is correct that a deposition may have been taken, the test for compliance with N.J.S.A. § 2A:17-1 is not whether all possible measures to locate personalty have been exhausted, but rather whether the judgment creditor has exerted "reasonable efforts" constituting a "good faith attempt" to do so.

My conclusion that the actions of CCC in obtaining an investigative report and in issuing an information subpoena constitute reasonable efforts by CCC to locate personalty owned by the debtor, under the circumstances, is entirely consistent with the cases that have addressed the sequence of execution requirements in N.J.S.A. § 2A:17-1. In Raniere, the judgment

creditor conducted no supplementary proceedings of any sort, and had no

information regarding personalty owned by the judgment debtor.  Raniere, 159

N.J. Super. at 337, 387 A.2d at 1258.  The Chancery Division determined to

invalidate the levy on the real estate on that ground.  Id. at 337-38, 387 A.2d

at 1258.  In In re Silverman, 6 B.R. 991, 996 (D.N.J. 1980), the district court

could not determine whether a good faith attempt had been made to locate

personalty by the judgment creditor, and so remanded the issue to the

bankruptcy court.  In Italiano, Judge Gambardella invalidated the levy where

the judgment creditor knew of the debtor's personal assets, including two

automobiles, a boat, insurance policies and jewelry, but failed to specifically

delineate the personalty for the sheriff, who was directed to levy on personal

and real property at the same time.  66 B.R. at 478-79.


       In Evcco Leasing Corp. v. Ace Trucking Co., 828 F.2d 188, 193 (3d Cir.

1987), during post-judgment supplementary proceedings, nominal personal

assets were discovered, but were not identified by the judgment creditor for the

sheriff.  The Third Circuit held that even if a good faith attempt to locate

personalty had not been accomplished by the judgment creditor, the levy would

not be invalidated because the debtor's principal waived the sequence of

execution requirement.  Id. at 196.  And in the recent non-precedential Third

Circuit decision of In re Marvaldi, 99 Fed. Appx. 414, 416 (3d Cir. 2004), the

judgment creditor conducted a motor vehicle search prior to the entry of the

judgment, mailed a set of supplemental interrogatories to the judgment debtors

four years following the entry of the judgment, and searched for bank accounts

by "looking for a copy of a check."  No responses were received by the judgment

creditor to the supplemental interrogatories issued, and no other action was

taken.  Id. at 415.  The court concluded that the judgment creditor had failed

to make a good faith effort to locate the debtors' personalty.  Id. at 416.


Finally, and most significantly, as noted above, the Pojanowski decision

from the New Jersey Supreme Court determined that the taking of a deposition

of the debtor, where the debtor responded negatively and evasively, constituted

compliance with the requirements of N.J.S.A. § 2A:17-1.  Pojanowski, 127 N.J.

at 242, 603 A.2d at 953.


Here, the written interrogatories directed to the debtor and her responses

to the questions posed, supplemented by the investigative reports obtained by

the judgment creditor about the debtor's assets, constituted the required good

faith attempt by CCC to locate personalty owned by the debtor prior to the levy

on the debtor's real property.

B.     Return of Writ of Nulla Bona


Several courts addressing the sequence of execution issue in New Jersey
have suggested in dicta that the requirements for a proper levy on real estate
are two-fold.  Not only must the levying judgment creditor make a good faith
attempt to locate personalty owned by the debtor prior to the levy on the
debtor's real property, but the sheriff must also search for personalty and
return a writ of nulla bona prior to execution against the debtor's real estate.
See, e.g., Marvaldi, 99 Fed. Appx. at 416 ("Although the requirement that the
sheriff issue a writ of nulla bona is not in the statute, it has been accepted by
the courts as a requirement."); Raniere, 159 N.J. Super. at 338, 387 A.2d at
1258 ("[B]efore levying and executing on the debtor's realty the sheriff must
return a writ of nulla bona, certifying that he has made a strict and diligent
search and has been unable to locate any personalty of the debtor within the
county.").  See also[11] Evcco, 828 F.2d 188; Silverman, 6 B.R. at 996; Bobilin,
83 B.R. at 263 n.6 (stating in dicta that Raniere requires a creditor to obtain a
writ of nulla bona prior to executing on real property in instances where
N.J.S.A. § 2A:17-1 controls); Italiano, 66 B.R. at 478-79.

---

[11]    In each of these cases, the court did not need to reach the "writ of
nulla bona" issue, and simply articulated an assumed requirement.

-15-

In this case, the sheriff did not return a writ of nulla bona prior to executing on the debtor's real property.  Nevertheless, I conclude that the sequence of execution requirements set out in N.J.S.A. § 2A:17-1 have been met.  Neither the statute as it is presently constituted, nor its true predecessors,[12] contain a requirement that a valid execution on real estate must be preceded by the return of a writ of nulla bona by the sheriff.  The case law requiring a returned writ, nulla bona, or implying such a prerequisite to a valid real property levy, can be traced back to the decision of the New Jersey Superior Court, Chancery Division, in <u>Raniere</u>.

To support the proposition that a writ of nulla bona must be returned by the sheriff before execution on the debtor's real estate may proceed, the <u>Raniere</u> court cited the General Statutes of 1877, section 77 at 1228, which provided that, among the documents required to be filed by a judgment creditor before a judgment could be docketed as a lien against the debtor's land was "a copy of the constable's return writ, endorsed to the effect that he could not find

---

[12]    The legislative history of N.J.S.A. § 2A:17-1 can be traced back to 1846.  The current form of N.J.S.A. § 2A:17-1 was recompiled from the 1937 Revised Statute 2:26-80 (the portion previously referring to execution against terre tenants, heirs and devisees is now included in N.J.S.A. § 2A:17-70) which slightly reworded (but did not fundamentally change) 2 N.J. C.S. p. 2243, § 1 (1911).  The Compiled Statutes incorporated the 1874 law, "An act respecting executions," found in Rev. 1877, p. 389, § 1.  The 1874 version can be traced back to R.S. 660, § 4, "An Act making lands liable to be sold for the payment of debts." (1846).

sufficient personal property of the debtor within the county to satisfy the

judgment". <u>Raniere</u>, 159 N.J. Super. at 335, 387 A.2d at 1257.  In other

words, a writ of nulla bona was required.


The <u>Raniere</u> court's reliance on section 77 of the 1877 Act is misplaced.

The statute analyzed by <u>Raniere</u> did not apply to the sequence of execution

requirements for judgment liens specified in N.J.S.A. 2A:17-1 or its

predecessors.  Rather, the 1877 Act cited in <u>Raniere</u>, entitled "An Act

constituting 'District Courts' in certain cities in this State," ("District Courts

Act"), 1877 Pub. L. 150, pp. 234-95, was a separate comprehensive statutory

scheme authorizing cities reaching certain thresholds of population to set up

"district," or municipal, courts for the trying of civil suits, with a jurisdictional

limit of $200.  <u>Id</u>. at §§ 1-14, at pp. 234-36.   The 1877 Act was designed to

protect real estate in various ways[13], with the clear intention that a small

judgment acquired in a court of limited jurisdiction would be unlikely to result

---

[13]     The district courts had no jurisdiction over causes involving title to
lands.  Where a defendant pled title to real estate as a defense, the plaintiff was
required to pursue his or her cause of action in the state's law courts, <u>i.e.</u>, the
"Circuit Court" or the "Supreme Court."  <u>Id</u>. at §§ 6, 9, 30, at pp. 235, 243.
Unless the County Court of Common Pleas, the appellate forum for the district
court, entered a "Rule" allowing for title to real estate to be effected, the Court
of Common Pleas was not allowed to "affect or bind" real estate in issuing a
judgment on an appeal from a district court judgment. <u>Id</u>. at §§ 84-85, at p.
259.

in an execution sale of real estate.  Section 77, which required a constable to

return a writ of nulla bona on the execution of a district court judgment,[14]

created various procedural obstacles to the docketing of a district court

judgment with the county Court of Common Pleas.

---

[14]    Section 77 of the 1877 District Courts Act states:

And be it enacted, That when a judgment is obtained in any
district court, for an amount not less than ten dollars, including
costs, and execution shall issue thereon, and be returned by the
constable to whom it has been delivered to be executed, endorsed
to the effect that he could not find any personal property of the
party against whom the execution was issued on which to levy, or
that he had levied and sold goods and chattels, and had made
thereof part of said judgment, and that the same was not fully
satisfied, and stating the balance still unsatisfied, the clerk of the
court of common pleas of the county where such judgment was
obtained, upon the request of the person or persons obtaining
such judgment, and upon filing in his office a transcript of the
proceedings from the docket of the district court in which such
judgment was obtained, under the seal of said court and signed by
the clerk thereof, and a certified copy of the state of demand and
set-off filed in said action, with a certified copy of the return of the
constable, and also an oath or affirmation of the party, his or their
attorney or agent making such request, that at the time of filing
such transcript, a certain amount, not less than ten dollars, is still
due, stating the amount, and that he believes the debtor is not
possessed of goods and chattels sufficient to satisfy the amount
due, shall enter, in the docket provided for that purpose, the
transcript of such judgment in words at length, containing the
name of the judge of the district court before whom the judgment
was obtained, the names, at length, of the parties to said
judgment, the style of the action, the date of the judgment, the
amount recovered with costs, the substance of the return of the
constable, and the amount stated to be due in the affidavit.

Rev. 1877, § 77, at pp. 257-58 (emphasis added).

-18-

New Jersey statutes relating to the Special Civil Part are the statutory descendants of the revised District Courts Act.[15]  N.J.S.A. § 2A:18-32 allows for the docketing of Special Civil Part judgments with the Superior Court, from which point the judgment "operate[s] as though it were a judgment obtained in an action originally commenced in the Superior Court other than in the Special Civil Part."  N.J.S.A. § 2A:18-38.  It is thus "the act of docketing . . . a Special Civil Part judgment in the Superior Court [that] makes it a judgment entitled to lien status against the real property of the judgment debtor."  New Century Fin. Servs., Inc. v. Staples, 379 N.J. Super. 489, 496, 879 A.2d 1190, 1194-95 (App. Div. 2005).  A returned writ, nulla bona, is no longer required.  N.J.S.A. § 2A:18-34 requires only that a statement signed by the clerk of the Special Civil Part be filed with the Superior Court, noting the "date of issue and return of execution, if any," with an affidavit from the judgment creditor that a "certain stated amount, not less than $10, was still due on the judgment."

My review of the statutory predecessors of N.J.S.A. § 2A:17-11, as well as section 77 of the District Courts Act, compels me to conclude that where

---

[15]     The final expression of section 77 and associated parts of Rev. 1877 can be found in N.J.S.A. § 2A:18-32 to 18-45.  In 1991, the legislature substituted "Special Civil Part" for "county district court."  L.1991, c. 91, § 48. The statute can be traced from L.1898, § 168-175 (as is relevant here) through various amendments to 1937 Revised Statute 2:32-186 to -196 to the current version.

reasonable efforts to locate debtor's personalty are made by the judgment

creditor, a writ of nulla bona is not required to be returned by the sheriff as a

prerequisite to the validation of an execution against real estate.  Such a writ

was required to be returned only on judgments entered in what were then

labeled "district courts".


My conclusion is informed by the respective responsibilities of judgment

creditors and levying officers under New Jersey law.  In New Jersey, a

judgment creditor is required to conduct discovery proceedings before real

estate is levied upon.  Vitale v. Hotel California, Inc., 184 N.J. Super. 512, 530,

446 A.2d 880, 889-90 (Law Div.), aff'd, 187 N.J. Super. 464, 455 A.2d. 508

(App. Div. 1982).

> The proper procedure is to ascertain the existence of any assets
> owned by defendants through the supplementary proceedings
> authorized by R. 6:7-2, or by other legitimate investigative
> techniques, and then to instruct the constable to levy upon the
> discovered assets. . . . [T]he court will not grant a constable
> permission to make a general (and perhaps fruitless) search of a
> debtor's home without the showing of some reasonable basis for
> the request.

Spiegel, Inc. v. Taylor, 148 N.J. Super. 79, 84, 371 A.2d 838, 840 (Bergen Cty.

Ct. 1977).


The purpose of, and policy behind, the supplementary proceedings of R.

4:59-1(e),[16] is to enable a judgment creditor to fulfill its responsibility to direct

the executing officer towards specific personal property of the debtor on which

the latter is to levy.

> R. 4:59-1(d) [now R. 4:59-1(e)] and R. 6:7-2 are specifically
> designed to provide the judgment creditor with a fast and
> inexpensive method of discovering the assets of the judgment
> creditor.  Yet this judgment creditor, like so many others, chose to
> forego a supplementary proceeding and instead directed the sheriff
> to levy and execute initially and exclusively against the plaintiffs'
> real property.  Such a practice cannot be tolerated.

Raniere, 159 N.J. Super. at 337, 387 A.2d at 1258.


Following the conduct of post-judgment discovery proceedings, a

judgment creditor has the responsibility to deliver the writ of execution of the

sheriff with instructions to levy.  Vitale, 184 N.J. Super. at 519-20, 446 A.2d at

884.  The sheriff has the complementary duty of executing the writ "according

to the plaintiff's instructions."  Id. at 520, 446 A.2d at 884.  The Vitale court

noted that:

> The writ is in the "exclusive control" of the judgment creditor; the
> sheriff must follow the creditor's reasonable instructions regarding
> the time and manner of making the levy and must abide by special
> instructions to make an immediate levy, if practicable, when
> plaintiff demonstrates necessity.

---

[16]    Rule 4:59-1(e) incorporates R. 6:7-2, the Rule cited by the Spiegel
court, which sets forth both the scope and substance of such supplemental
discovery proceedings in greater detail.

Id. See also Spiegel, 148 N.J. Super. at 83-84, 371 A.2d at 839 (stating that an "officer is not required to search out the judgment debtor's assets.  Rather, the burden is upon the judgment creditor to point out what may be levied upon.") (citing to 17 N.J. PRACTICE (COUNTY DISTRICT AND MUNICIPAL COURTS) § 992 at 619 (2d ed. 1973)).

Here, CCC had the responsibility to deliver the writ of execution to the sheriff, with instructions regarding the location and identity of property to be levied on.  Because no personal property of the debtor had been located, despite reasonable efforts by CCC to do so, CCC instructed the sheriff to levy upon the debtor's real estate.  Neither the statute at issue, N.J.S.A. § 2A:17-1, nor the development of the case law in New Jersey on this issue, supports the conclusion that where a reasonable search for a debtor's personalty has been conducted, and no such personalty has been found, the sheriff is nevertheless required to return a writ of nulla bona as a pre-condition for the validation of a levy against a debtor's real property.

I conclude that the levy executed in favor of CCC against the debtor's real property cannot be vacated on this record.  The trustee's motion for summary judgment must be denied.  Because the plaintiff-trustee cannot achieve affirmative relief on this complaint, the complaint will be dismissed.

-22-

Counsel for CCC shall submit an order in conformance with this opinion.

Dated:  March 16, 2006

_____
JUDITH H. WIZMUR
CHIEF U.S. BANKRUPTCY JUDGE